# Richmond

JAMES SHEPPARD POTTS v. COMMONWEALTH OF VIRGINIA.

January 14, 1946.

Present, All the Justices.

The opinion states the case.

*James Sheppard Potts, Pro se.*

*T. Gray Haddon,* for the Commonwealth.

PER CURIAM.

James Sheppard Potts has filed a petition with this court seeking a writ of error to a judgment of the Law and Equity Court of the city of Richmond, adjudging him guilty of contempt and fining him the sum of $10.

The incident which precipitated the entry of the judgment complained of arose in this manner: In December, 1943, James Sheppard Potts instituted in the court below an action at law against his brother, Joseph Schoolfield Potts, Jr., to recover the sum of $2,000, with interest thereon from December 20, 1938, alleged to be due under a contract

whereby the defendant had agreed to purchase of the plaintiff, at this figure, the latter's undivided one-third interest in certain real estate in the city of Richmond. The defendant filed a plea of the general issue and certain pleas of set-off. The plaintiff filed replications asserting that the items claimed by way of setoff were barred by the statute of limitations.

When the case came on to be heard, on November 13, 1944, the court suggested to counsel on both sides that the matter should be transferred to the equity side of the court where the machinery for dealing with the situation was more appropriate than that afforded in an action at law. However, both sides insisted that the matter should be heard on the law side of the court, and this was done. Apparently some bitterness of feeling was evidenced on both sides. .

Before the evidence had been completed the trial court ordered and directed the plaintiff, James Sheppard Potts, to deliver and deposit with the court a good and sufficient deed, executed and acknowledged by him and his wife, conveying with general warranty the undivided one-third interest in the property to the defendant, Joseph Schoolfield Potts, Jr., or else to suffer a dismissal of his action. It was explained to the parties and their counsel that this deed would be delivered to the defendant upon his satisfying any final judgment which the plaintiff might recover of him in the action. The plaintiff, James Sheppard Potts, complied with this direction, but under protest.

The trial resulted in a verdict for the plaintiff in the sum of $1,759.32, the effect of which was to allow the defendant some, but not all, of the setoffs claimed by him. The verdict was silent as to interest. The plaintiff moved for a new trial, insisting that the verdict was wrong, (1) in allowing any setoffs to the defendant, and (2) in failing to allow the plaintiff interest from the date claimed in the declaration, namely, December 20, 1938. The motion was fully argued on January 8, 1945, and the trial court took the matter under advisement. It announced its decision in a written memorandum filed on January 25, 1945. It disallowed a

small setoff which the jury had allowed the defendant, and to that extent increased the amount which the plaintiff was entitled to recover. Since the verdict was silent as to interest, the court ruled that under Code, section 6259, interest should run from the date of the verdict.

On January 30, 1945, the court settled and initialed for entry, in the usual manner, an order drawn in accordance with its written opinion. On the same day, but before this order had been spread upon the order book, counsel for the defendant learned and reported to the court that James Sheppard Potts, the plaintiff, had, on December 12, 1944, recorded in the Clerk's Office of the Chancery Court of the city of Richmond a deed whereby he and his wife had conveyed the undivided one-third interest in the property in controversy to the Virginia Trust Company, trustee, to secure a note in the sum of $2,700, dated December 12, 1944, payable on demand to the Bank of Westmoreland, Incorporated. Upon learning that this had been done, the court immediately notified counsel for the respective parties that the final order of January 30, 1945, would not be spread upon the order book unless and until this deed of trust was released. It should be said here that this notification from the court was the first intimation that counsel for the plaintiff had of the recordation of the deed of trust.

Under date of January 31, 1945, the plaintiff, James Sheppard Potts, directed a letter to the lower court in which he asserted, notwithstanding the court's ruling to the contrary, his right to place the deed of trust upon the property. This letter expressed no intention of having the deed released.

The deed having not been released by February 6, 1945, the court directed the issuance of a rule against James Sheppard Potts, ordering him to appear on February 12 and show cause why he should not be punished for contempt in thus interfering with the orderly processes of the court.

On the return day of the rule, James Sheppard Potts appeared in person and filed a written answer in which, while disclaiming any intention to be disrespectful to the court,

or disobedient to its orders, he nevertheless reasserted his claim that the execution and recordation of the deed of trust were within his legal rights. Indeed, the answer was devoted largely to a review of the litigation on its merits and an expression of the plaintiff's resentment at the outcome. His attitude was substantially the same when testifying during the contempt proceedings.

At the conclusion of the hearing on the contempt charge, the trial court reiterated its ruling that the deed of trust must be released, pointing out that until this was done and the defendant was assured of receiving a clear title to the property, the plaintiff, James Sheppard Potts, would not be entitled to the entry and satisfaction of the judgment as previously indicated. The court further indicated that unless its order was promptly complied with, it would be compelled to deal drastically with the plaintiff.

A final decision on the contempt charge was reserved and continued until February 23. When the hearing was resumed on the latter date, the plaintiff, through his counsel, announced that the obnoxious deed of trust had been released on February 21.

Upon consideration of the evidence the trial court was of opinion that the plaintiff, in executing and recording the deed of trust, under the circumstances stated, was guilty of contempt of court and should be punished. However, it took into consideration the subsequent release of the deed as a mitigating circumstance and imposed a fine of only $10.

■■ We agree with the trial court that the act of the plaintiff in thus executing and recording the deed of trust on his interest in the property in controversy constituted a contempt of court. It is elementary that any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt. 17 C. J. S., Contempt, section 8, p. 9; 12 Am. Jur., Contempt, section 9, p. 395.

That the conduct of the plaintiff here was embarrassing to and obstructive of the court in the administration of justice is too plain for argument. The court had, as has been said, put the plaintiff upon terms to deposit with it a good

and sufficient deed insuring to the defendant a good title to the property should it be adjudicated that the latter must pay for it, and should he satisfy a judgment to that effect. The interposition of the deed of trust lien upon the property, for an amount more than what the defendant was required by the court's judgment to pay for it, completely blocked the judicial disposition of the controversy between the parties. Moreover, this obstruction was permitted by the plaintiff to remain in place, so to speak, for nearly thirty days after its effect had been called to his attention.

It is argued that the plaintiff should not have been adjudged guilty of contempt, because in his answer and during his testimony at the hearing of the contempt proceedings he disavowed any intention of committing a contempt or of being disrespectful towards the court.

It is true that where the act complained of is of doubtful import and may reasonably be capable of two constructions, a disclaimer of any purpose to be guilty of contempt or to hinder or impair the administration of justice is a good defense. *Carter* v. *Commonwealth*, 96 Va. 791, 802, 803, 32 S. E. 780, 45 L. R. A. 310. But as was pointed out in *Boorde* v. *Commonwealth*, 134 Va. 625, 639, 114 S. E. 731, such a disclaimer in the original answer of the accused, or in his testimony given at the contempt proceedings, is no defense where it is apparent from the surrounding circumstances that the act done is not susceptible of doubtful interpretation.

Here it is manifest from a reading of the record that the act complained of was not of doubtful import. It was not, as the plaintiff suggests, merely an assignment to the deed of trust creditor of the proceeds of the judgment which he might have obtained against the defendant. It was a specific lien upon the property in controversy, and was designed, we think, to thwart the judicial solution of the controversy between the parties. It is apparent from the plaintiff's answer, his testimony in open court, and from his brief before us, that he was dissatisfied with the jury's verdict, the effect of which, if carried into a judgment of

the court, would have given to the defendant a clear title to the property upon the payment of the amount fixed by the verdict, but which the plaintiff thought was inadequate. The execution and recordation of the deed of trust, as has been said, completely blocked such disposition of the controversy.

A dissatisfied litigant should challenge the correctness of an adverse judgment or ruling by an appeal and not by disobedience of such order or by interfering with or obstructing the judicial processes. *Robertson* v. *Commonwealth*, 181 Va. 520, 537-8, 25 S. E. (2d) 352, 359, 146 A. L. R. 966.

In our opinion the judgment complained of is plainly right, and therefore the writ of error is refused.

*Writ of error refused.*